Good morning, Honors. My name is Casey Carter. My name is Anne Rosari. And I, along with my co-hosting honors, will be your Student Policy Focus Chair for this fall, Tom Garcia. We are joined today by our Senior Vice-President for History, Gary Watt, and David Tolman. Thank you for joining us today, and we're excited to hear about your honors. We'll just start with some information about Tom Garcia's admission before the Immigration Convention. NTA number 5, which is on the record, is page 232. Admission did not establish reputability due to the likes of serial issues and misuse as to reputability provided in the text form. Specifically, NTA number 5 did not establish a domestic violence protection order. Before you get us straight into the heart of it, where is this exhausted? Tom is exhausted. He has been breathing into the VRA for some time. Before the VRA, he says, the protective order is based on the state's law. It is an absurd law. It was based on the Kansas Fair. He was working in the Senate. I'm working on this Convention right now. For me, this is the very fact that there is a protective order. It is a state law, and it's an absurd law. It's a challenge. And it's an important challenge. It is a challenge. It's non-categorical in nature. It's hard for me to see how the VIA could ever address those issues on. It's based on the state, and it's absurd. Your Honor, on page 18, correct, although that's the very fact, he also points out that there's no health care in this country. Your Honor, I would like to reiterate, person for person, first of all, the protective order was issued, and since that was the specific requirement of the VIA, the original statute, it's been easy for him to provide their ambitions for the categorical and modify the categorical approach. Under a liberal interpretation of this claim, which he, quote, claims that the University of Kansas did not do, I'm not sure if it's possible for him to excuse the VIA, but here, there was not a specific review of the protective order issued. Your Honor, the request to remain is to suggest for a further review by the judge with evidence of post-infection relief. That will be available when the review goes into effect. So, again, it doesn't seem to me that we're really looking at what he wants to look at here, and I'm having a tough time understanding how the VIA would have governed, because they could, too, have had a chance to look at this, or just exhausted it. And I, I mean, personally, myself, if all you want is further review by the judge with evidence that post-infection relief is available, when you get to that point, it doesn't seem to me to have anything to do with the issue in front of me. Your Honor, the VIA should have been put on evidence based on the response of the emergency information in regards to that district's protective order, because we know there's evidence in the district's protective order of what the VIA, or the post-infection responders, have or should have looked at, or if that's what the Supreme Court has looked at in the case, whether it be a property, e-commerce, whether it's funds from a party, as you mentioned, that should have been established in regards to the VIA. So, in this case, the VIA, the Supreme Court, your Honor, in regards to the response of the counsel, and then, before the immigration community, responding to the violation of the protective order, and therefore, the immigration community, the immigration judge, however, is standing in charge of accountability. So, has the VIA been able to assist in that process? No, Your Honor. In fact, in fact, the VIA did not establish that this would be a domestic violence protective order, and the VIA specifically requires that this violence protective order act only in order to preserve the protective evidence of domestic violence, and therefore, it is a cross-examination of the human rights protection order by the country, and therefore, it is not a cross-examination of the human rights protection order. It may be such an error as a protective order, however, the funding of the protective order is not established, and it's very common for establishing a rule saying, you should not violate it. Here, Your Honor, it's being violated, so, it's a self-based decision of a person who is ordered or can be violated, unless, unless it's actually a criminal offense, unless it's, if you want to have a political commentary. Your Honor, what we want to see here now is not to keep violating the sex order, but to save up the sex order, not to violate it, because funds in 61 countries, for example, with its human rights orders, austerity orders, and those orders are not covered in the existing legislation, and there is therefore a history of discrepancy that requires a constraint, and it is a constraint that you should be conceding. To establish, for us, a comprehensive order, would be, she ought to be on top of her seat in the Constitution. Your Honor, I have no disconception that Your Honor needs to concede to me that she ought to be a human being anymore, and I'm not wrong in making this concession. However, in order to rely on that concession by permissibility, the court cannot define how to make that concession, or to make that concession, in the order in which it is available. Your Honor, we are merely resulting from the court. I'm just wondering why the court couldn't make the assumption that all of the judges were competent in these order processes, especially those in the concession, or the court or whatever. What would be your response to that? The question was raised. The only way that the precise order could be established as a domestic violence protected order is by looking at the conditions. And that is something that we only allow if we first establish the facility. So, relying only on the four quarters of the sentence, all we know is there is a protected order violation. We do not know that it's a domestic violence, specifically domestic violence protected order. I thought that the question that was raised was the argument that was exhausted was the argument that the nature of the statute was not what it was intended to be. You know, and I didn't think that there was any skewness in the order and the nature of the protected order. Your Honor, as I just said, Your Honor, what the judge called mercy and exhausted all of the vindication, he was not always raising the issue about the appropriate placement. He was not assessing the securities associated with the intricacies of the categorical product by the categorical approach, but he argued that the conviction did not match the I-8 statute, that there were not evidence that the conviction matched the I-8 statute, and he here showed exactly why he wished to establish evidence that could only be considered under the I-8 under the I-8 statute. I have to point one point to a minute here. He says, from August 23, 2007, he was convicted in the California Superior Court in County Orange for violating the protection order issued on October 27, 2002, in violation of Section 166C1. Violating the court command order     of the California Superior   says, from August 23, 2002, in violation of the     County Orange for violating the protection order issued on October 23, 2002, in violation of the California Superior order issued on October 27, 2002, in violation of  California in violation of the  Superior California   issued on October 27, 2002,   of the California Superior October  2002, in violation of
judges: Wallace, Schroeder, N.R. Smith